Arletta UPTEGROVE, Lori Ann Uptegrove and Richard Wayne Uptegrove, minors, by their guardian ad litem, Arletta Uptegrove; and Arletta Uptegrove, Executrix of the Estate of Edwin Wayne Uptegrove, Plaintiffs and Appellants,

v.

UNITED STATES of America, Allan L. Cunningham, Alan D. Worrell; William M. Hawkes, Defendants and Appellees.

No. 77–1723.

United States Court of Appeals, Ninth Circuit.

May 21, 1979.

Rehearing Denied Aug. 6, 1979.

Marshall L. Foreman, Jr., Luce, Forward, Hamilton & Scripps, Donald L. Salem, San Diego, Cal., for plaintiffs and appellants.

Michael E. Quinton, Asst. U. S. Atty., San Diego, Cal., for defendants and appellees.

Before CHAMBERS and HUG, Circuit Judges, and KELLEHER,* District Judge.

HUG, Circuit Judge:

The appellant, Arletta Uptegrove, individually and as guardian ad litem for her two minor children, appellants Lori and Richard Uptegrove, brought this action under the Federal Tort Claims Act, 28 U.S.C.

* The Honorable Robert J. Kelleher, United States District Judge for the Central District of California, sitting by designation.

§§ 1346(b), 2671–2680, against the United States and individually against Allan Cunningham, Alan Worrell and William Hawkes, FAA air traffic controllers, for the death of her husband and their father, Navy Lieutenant Edwin Uptegrove. Uptegrove was killed when an Air Force C–141 transport, on which he was a military space available passenger, crashed into the side of Mount Constance near Seattle, Washington, due to the alleged negligent conduct of the three FAA air traffic controllers. The trial judge granted summary judgment in favor of the United States, for failure to state a claim upon which relief could be granted, on the basis of the Feres doctrine. This doctrine which was first announced in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), precludes recovery under the Federal Tort Claims Act by a military person for injuries sustained during an activity incident to his military service. The court held that Lt. Uptegrove's death was incident to his military service and that only the status of the plaintiff, and not that of the tortfeasor, can be considered in determining the applicability of the *Feres* doctrine. We agree and therefore affirm.[1]

### Facts

Uptegrove took leave from his ship, stationed in the Philippines, on March 19, 1975. He traveled to Japan, where he boarded an Air Force C–141 jet transport bound for McChord Air Force Base near Seattle, Washington. His ultimate destination was his home in San Diego, California, where he planned to visit his family while on leave. Uptegrove boarded the transport as a military space available passenger; his presence on the aircraft was a result of the fact that he was on active duty in the United States Navy. While on the C–141, Uptegrove was subject to the command of the military flight crew, and could be disciplined before a military court for violating provisions of the Uniform Code of Military Justice.

After a long flight across the Pacific Ocean, the C–141 approached McChord Air Force Base, under conditions of very poor visibility. FAA Air Traffic Controller Cunningham in the Seattle Air Route Traffic Control Center directed the transport to descend to an altitude of 10,000 feet above sea level at 10:52 P.M. Four minutes later, and after the C–141 reported its altitude at 10,000 feet, Cunningham requested that it descend to, and maintain, an altitude of 5,000 feet. Less than two minutes later, the transport collided with Mount Constance at an altitude of 7,150 feet. All aboard were killed.

### Discussion

The appellants make two arguments. The first is that the trial judge erred in finding that Uptegrove's death arose out of activity incident to his military service. The second argument is that the *Feres* doctrine is not applicable here because appellants' claim is based upon the negligence of the civilian employees of the government, rather than the negligence of its military personnel, and thus there is no threatened interference with military discipline and no reason for the application of the *Feres* doctrine. We disagree.

By enacting the Federal Tort Claims Act, the United States has consented to suits against it for the wrongful conduct of its employees acting within the scope of their employment "under circumstances where . . . [it], if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred". 28 U.S.C. § 1346(b). In *Feres,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152, the Supreme Court recognized an exception to the government's general liability under the FTCA "for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service". *Id.* at 146, 71 S.Ct. at 159.

Appellants contend that Uptegrove's death did not arise out of or in the course of activity incident to military service because

---

1. The trial court dismissed the action against Cunningham, Worrell and Hawkes because it lacked personal jurisdiction over those defendants. The appellants do not appeal that order.

he was on leave and was not traveling pursuant to military orders, but merely as a voluntary passenger on a military plane.

In a case very similar to this one, we held that an action under the FTCA was barred by *Feres*. In *Archer v. United States,* 217 F.2d 548 (9th Cir. 1954), *cert. denied,* 348 U.S. 953, 75 S.Ct. 441, 99 L.Ed. 745 (1955), an action was brought under the FTCA by the parents of a United States Military Academy cadet, who was killed while on leave in the crash of an army plane on which he was a military space available passenger. There the court stated:

> The Trial Court was undoubtedly correct in holding that a cadet riding under military discipline on an army plane under control of a superior officer has no claim under the Act for injury sustained through whatever cause. This principle would not vary even though the service man were on leave and whether he were on the plane voluntarily or by command. He was in line of duty. Under such circumstances, his parents could not recover for his death.

*Id.* at 551. The court noted that he was subject to military discipline on the military plane, even though riding voluntarily and the court further stated:

> A "cadet" being "transported" in a "United States Army Plane," which was operated by an employee of the United States Army, has no valid claim against the government for an accident causing him damage. Nor has anyone such a claim for his death.

*Id.* at 552. This holding has been followed in other courts. *See Herreman v. United States,* 476 F.2d 234 (7th Cir. 1973); *Homlitas v. United States,* 202 F.Supp. 520 (D.Or. 1962); *Fass v. United States,* 191 F.Supp. 367 (E.D.N.Y.1961).

Here, as in *Archer,* Uptegrove was subject to military discipline while he was on the C–141. Under *Archer,* the fact that he was on leave and voluntarily boarded the transport does not alter the fact that the activity was incident to his military service.

In their second argument, appellants contend that the FAA employees were civilian employees and that the policy reasons for the *Feres* doctrine do not apply because there is no threatened interference with military discipline. A number of factors have been mentioned by the Supreme Court as the basis for the *Feres* doctrine. They are well summarized in *Stencel Aero Eng'r Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), the Court's most recent pronouncement on the subject. There the Court stated:

> First, the relationship between the Government and members of its Armed Forces is "distinctively federal in character," [*Feres*] 340 U.S. at 143, 71 S.Ct. 153, citing *United States v. Standard Oil Co.,* 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947); it would make little sense to have the Government's liability to members of the Armed Services dependent on the fortuity of where the soldier happened to be stationed at the time of the injury. Second, the Veterans' Benefits Act establishes, as a substitute for tort liability, a statutory "no fault" compensation scheme which provides generous pensions to injured servicemen, without regard to any negligence attributable to the Government. A third factor was explicated in *United States v. Brown,* 348 U.S. 110, 112, 75 S.Ct. 141, 99 L.Ed. 139 (1954), namely, "[t]he peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty  . . . ."

*Id.* at 671–72, 97 S.Ct. at 2058. The fact that all of these considerations are not present in a particular case does not mean that the *Feres* doctrine should not be applied. *United States v. Lee,* 400 F.2d 558 (9th Cir. 1968), *cert. denied,* 393 U.S. 1053, 89 S.Ct. 691, 21 L.Ed.2d 695 (1969). The Supreme Court has never indicated that *Feres* should be limited only to situations in which interference with military discipline is threatened. *Id.* at 564.

In *Lee,* a sergeant in the Marine Corps was a passenger aboard a plane being oper-

ated by the Military Air Transport Service. The complaint alleged that the plane crashed as a result of the negligence of employees of the FAA, as in this case. The court held the complaint must be dismissed, rejecting the argument that the *Feres* doctrine should not apply where the alleged negligence is that of civilian, rather than military employees. The court stated:

> The Supreme Court and Circuit cases are consistent in holding that the status of the deceased or injured person controls. If his injury or death was connected with the military, the claimant may not recover under the Tort Claims Act. . . .

*Lee,* 400 F.2d at 562.

It had been argued before the Court in *Lee* that the *Feres* doctrine had been eroded by later cases. The continued vitality of *Feres,* as found in the *Lee* case, has been recently confirmed in *Stencel Aero Eng'r Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977).

We hold, therefore, that the trial judge properly considered only Uptegrove's military status, not that of the tortfeasor, and that there is no material issue of fact that his death arose out of activity incident to his military service. The *Feres* doctrine bars the appellant's FTCA action.

Affirmed.